UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **United States of America** | \* | |
| | \* | |
| v. | \* | Case No. 21-cr-0447-1 (CJN) |
| **Jonathan Pollock** | \* | |
| | \* | |

**MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS
AND PRECLUDE THE USE OF PROTECTED SPEECH**

Defendant Jonathan Pollock, by his undersigned counsel, hereby respectfully moves to dismiss the Indictment against him on the grounds that it violates his rights under the First Amendment. He also moves to preclude the use against him of statements made by him that are protected by the First Amendment.

**I.   The Prosecution of Mr. Pollock For His Alleged Conduct on the Capitol Grounds on January 6, 2021 Violates His Rights Under the First Amendment**

The starting point for determining the constitutionality of a statute that limits speech and peaceful protest is to identify the type of forum to which the statute applies. *See United States v. Nassif*, 97 F.4th 968 (D.C. Cir. 2024). In a public forum, restrictions on speech must be: (1) "content-neutral;" (2) "narrowly tailored to serve a significant governmental interest;" and (3) "leave open ample alternative channels of communication." *Id., citing, Cmty. for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 387 (D.C. Cir. 1989).

> The quintessential "traditional" public fora are streets, sidewalks, and parks, which, "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."
>
> We have long recognized the Capitol grounds – a series of lawns, only partially walled, surrounding the Capitol buildings – as a traditional public forum. Indeed, "[t]here is no doubt that the Capitol Grounds

> are a public forum." The same is true of the sidewalks wrapping around the Capitol, which are "continually open, often uncongested, and ... a place where people may enjoy the open air or the company of friends and neighbors."
>
> The Capitol buildings themselves, as defined in 40 U.S.C. § 5101, are not a street, sidewalk, or park to which we apply the "working presumption" of public-forum status. A visitor entering a Capitol building crosses a doorway's physical threshold separating exterior from interior – itself a familiar signal that the building's interior "differs from the remainder of the public Grounds in ways that make it uniquely 'nonpublic.' "

*Nassif*, *supra,* (internal citations omitted).

On January 6, 2021, Mr. Pollock came to Washington, D. C. to attend a political rally beind held near the Washington Monument. That afternoon, Mr. Pollock along with others is alleged to have walked from that rally to the Capitol Grounds. *See* Complaint (ECF 1-1 at 4). At all times, he remained outside the Capitol, in areas generally known as the Capitol Grounds. At no time, did he cross the threshold into the Capitol Building.[1] As the Capitol Grounds are a "public forum," *Nassif, id.,* the prosecution of Mr. Pollock for alleged conduct on the Capitol Grounds on January 6 violates his First Amendment rights.

The Complaint and discovery produced by the Government appears to show that all of Mr. Pollock's conduct on January 6 took place outside the Capitol, in areas that are a "public forum".

---

[1] "A visitor entering a Capitol building crosses a doorway's physical threshold separating exterior from interior – itself a familiar signal that the building's interior "differs from the remainder of the public Grounds in ways that make it uniquely 'nonpublic.' *Lederman*, 291 F.3d at 42." *United States v. Nassif*, 97 F.4th at 975.

### A. The Government's Broad Perimeter Excluding Demonstrations on January 6 Were Not Reasonable Time, Place and Manner Restrictions

*Nassif* leaves no doubt that the Capitol Grounds are a "public forum" for First Amendment purposes and remained so on January 6. As such, the government's ability to restrict expressive conduct therein is very limited: "It may enforce reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Lederman v. United States,* 291 F.3d 36, 44 (D.C. Cir. 2002).

The barriers set up on the Capitol Grounds on January 6 did not meet the "reasonable time, place, and manner" limits that the First Amendment imposes on public forum prosecutions. The restrictions put in place on the Capitol Grounds on January 6 do not become reasonable just because the government asserts so. At a minimum, the government must put forth some factual basis for its decision to keep demonstrators so far away from the Capitol Building. *See, e.g., Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002) (rejecting boundaries set by government "banning leafleting and other demonstration activities on the sidewalk at the foot of the House and Senate steps on the East Front of the United States Capitol" as not meeting "time, place and manner" requirements). Indeed, in *Lederman,* the D.C. Circuit rejected the government's justification that "the sidewalk's function as a security perimeter around the Capitol" was incompatible with public use. *Id*., at 43.

Mr. Pollock submits that the placement of makeshift "barricades" on the Capitol grounds, and the imposition of other restrictions on persons seeking to engage in political demonstrations on January 6 did not meet the "the time, place and manner" limitations imposed by the First Amendment. At a minimun, the Court must strictly scrutinize the placement of barricades and other restrictions that

the government sought to impose to determine whether such restrictions comport with First Amendment guarantees before it may allow Mr. Pollock to be prosecuted for his activities on January 6. Indeed, the broad perimeter that the government imposed on the Capitol Grounds on January 6 amounted to the type of total restriction on speech on that day that has been rejected by the Supreme Court and the D.C. Circuit. *Id*. at 45. At a minimum, the government is required to present evidence that it has imposed such a broad perimeter at the many other times, when the Capitol became a restricted building by virtue of the Vice President's presence in the building. The many demonstrations that have been held on the steps of the Capitol throughout many years would belie any notion that the perimeter imposed on January 6 was the "least restrictive" or that it allowed "ample alternative channels of communication."

### B.     Mr. Pollock Has A Right To Rely on a First Amendment Defense

In *United States v. Robertson and Nassif*, the D.C. Circuit makes clear how the First Amendment right to peacefully protest may be raised by persons accused on criminal conduct on January 6. In rejecting a challenge to a § 1512(c) conviction, *Robertson* recognized a "mere protestor" defense to a January 6 prosecution:

> Robertson did not argue, for example, that he was a mere protestor exercising his First Amendment right to peacefully disagree with the outcome of the presidential election. The evidence established that Robertson was part of a mob that sought to overturn the result of the election by force, and that he used a dangerous weapon to impede the Electoral College vote certification. Where a defendant acts feloniously to obstruct a proceeding before the Congress, with no evidence or argument that he was merely engaged in peaceful expression, his culpability — *i.e.*, the "corruptness" of his actions — is not difficult to discern.

*United States v. Robertson*, 86 F. 4th 355, 370 (D.C. Cir. 2023). Mr. Pollock is entitled to have a

trier of fact determine whether his conduct on January 6 was protected by the First Amendment.

Equally so, under *Nassif*, Mr. Pollock is entitled to argue to the trier of fact that his conduct while on the Capitol Grounds involved protest, a right that the First Amendment guarantees while in a "public forum." At a minimum, he is entitled to raise the First Amendment as evidence of his state of mind.

## II. The Government's Expected Use of Political Speech in Prosecuting Mr. Pollock Violates His First Amendment Rights

The government appears to be planning to rely on statements made by Mr. Pollock expressing his opinion about matters of public interest. Such statements are protected by the First Amendment and cannot be used against him in this fashion. Statements that express opinions on political, public, religious or other issues of a public nature that do not create a clear and present danger may not be used to prosecute him. *See, e.g., Hess v. Indiana,* 414 U.S. 105 (1973) (reversing conviction of anti-war protester who was charged with disorderly conduct for stating "We'll take the fu**ng street later (or again),"); *Brandenburg v. Ohio,* 395 U.S. 444 (1969) (state may not forbid speech advocating the use of force or unlawful conduct unless this advocacy is directed to inciting or producing **imminent** lawless action and is likely to incite or produce such action); *Schenck v. United States*, 249 U.S. 47 (1919) (The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent).

> The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."

5

*Meyer v. Grant*, 486 U.S. 414, 421 (1988) (internal citations omitted).

Nothing that Mr. Pollock is alleged to have said in the days or months before January 6 even comes close to the clear and present danger requirement. As *Bradenburg* held, two conditions must be met to impose criminal liability for speech that incites others to illegal actions. First, the government must show that the speech will produce imminent harm. Second, there must be a likelihood that the incited illegal action will occur, and an intent by the speaker to cause imminent illegal actions. The *Brandenburg* precedent remains the principal standard in this area of First Amendment law.

Moreover, even in limited circumstances where a statement may be used to prove motive or intent, the statement must "be scrutinized with care to be certain the statements are not expressions of mere lawful and permissible difference of opinion with our own government or quite proper appreciation of the land of birth." *Wisconsin v. Mitchell*, 508 U.S. 476, 489-90 (1993).

**CONCLUSION**

Mr. Pollock respectfully requests that the Court dismiss the charges against him for violating his First Amendment rights. At a minimum, the Court must require the government to show that the broad perimeter that it imposed on demonstrations on January 6 were reasonable time, place and manner restrictions, including showing that they were the "least restrictive" and that it allowed "ample alternative channels of communication." He also seeks to require the government to show that any statements of made by him are not protected by the First Amendment, before it may use such statements against him in a criminal prosecution.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Motion was emailed this 21st day of August, 2024 to all counsel of record via ECF.

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**