**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-447 (CJN)** |
| | : | |
| **JONATHAN DANIEL POLLOCK** | : | |
| **OLIVIA MICHELE POLLOCK** | : | |
| **JOSEPH DANIEL HUTCHINSON, III,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS FOR MULTIPLICITY**

Over the course of about two and a half hours on January 6, 2021, defendant Jonathan

Pollock engaged in a marathon of obstructive and assaultive conduct including kneeing a police

officer in the face, ramming into a police line, striking at officers with a police shield, trying to

pull an officer over a railing, and fighting with officers in a passageway leading to the interior of

the Capitol building often referred to as the "Tunnel."  Based on his conduct, Pollock is charged

with seven counts of assault. *Second Superseding Indictment*, ECF No. 302. Pollock seeks to

dismiss four of those assault charges (Counts Two, Three, Seven, and Ten), arguing that they are

multiplicitous.  But each count charges a distinct assault with a different victim.  As such, they are

not multiplicitous. The Court should similarly reject Pollock's claim that the counts that charge

violations of different sections 18 U.S.C. § 1752 are multiplicitous. Rather, each of these counts

requires proof of a fact that the others do not.  Pollock's final argument fares no better. In a "throw

it at the wall and see what sticks" effort, he claims—without any analysis or support—that virtually

all the charges in the Second Superseding Indictment are multiplicitous because they arise out of

his conduct on January 6 on Capitol grounds.  Finally, Pollock's motion is premature;[1] multiplicity

is an issue to be resolved after trial, not before.  For these reasons, the Court should deny Pollock's

Motion to Dismiss Select Counts as Multiplicitous (ECF No. 332).

## BACKGROUND[2]

The morning of January 6, 2021, Jonathan Pollock, Olivia Pollock, and Joseph

Hutchinson—all wearing military-style tactical vests—attended then-President Trump's rally at

the National Mall. The group then walked to the U.S. Capitol. As the group approached Garfield

circle (just outside of restricted perimeter that had been established around a portion of the Capitol

grounds), one of their companions commented: "sounds like the cops are, ah, shooting rubber

bullets and macing people." As the group entered the restricted grounds, the companion again

commented: "they have a lot of fences and a lot of barricades but, um, that hasn't done very good

so far.  We got as far as the steps.  There's their fences laying all on the ground."

The group arrived at the west side of the Capitol where police had formed a defensive line

behind a low metal fence at the top of a small flight of stairs. At approximately 1:56 pm, Pollock

approached the police line and shoved a flagpole at the line officers:

---

[1] Pollock's motion, like several others, is also late.  Motions to dismiss were due on August 16, 2024. *See*, Minute Order dated August 7, 2024 (granting Pollock's motion for extension of time and ordering defendants to "file their motions to dismiss, if any, on or before August 12, 2024."); Minute Order dated August 13, 2024 (granting Pollock's oral motion for an extension of time to file motions to dismiss until August 16, 2024).
[2] This section includes only facts relevant to the instant motion and does not detail all of the defendants' conduct on January 6, 2021.



*Image 1: Screenshot from body worn camera showing Pollock (circled in red)*

Pollock and an officer grappled over the flagpole and Pollock fell backwards down the steps. *See* ECF No. 1-1 (Affidavit in Support of Complaint) ¶ 33(b), (c).  Hutchinson helped Pollock up off the ground.  Pollock then rushed the line and began pushing and pulling a metal barricade:



*Image 2: Screenshot from body worn camera showing Pollock (circled in red)*
*pushing on a metal barricade and Hutchinson (circled in yellow)*

*Id.* at ¶ 33(d).  Hutchinson joined his friend and grabbed hold of the metal barricade:



*Image 2: Screenshot from body worn camera showing*
*Hutchinson (circled in yellow) pulling on a metal barricade*

Then, with a group of rioters, Pollock and Hutchinson pulled the metal barricade away from officers, providing the angry and violent crowd with unobstructed access to the police line.  *Id.*

Taking advantage of this, Pollock leapt over other rioters to continue his attack on the police:



*Image 3: Screenshot from body worn camera showing*
*Pollock (circled in red) leaping towards the police line*

*Id.* at ¶ 33(e). Pollock then grabbed Officer A.M. by the waist and pulled her down the steps and away from the relative safety of the police line.



*Image 4: Screenshot from body worn camera showing*
*Pollock (circled in red) grabbing Officer A.M.*

Officer M.L. attempted to assist Officer A.M., and all three fell down the stairs. *Id.* at ¶ 33(f).

Before Officer M.L. was able to stand up, Pollock kneed Officer M.L. in the face:



*Image 5: Screenshot from body worn camera showing*
*Pollock (circled in red) about to knee Officer M.L. in the face*

*Id.* at ¶ 33(g). Pollock then punched Officer M.L. in the face:



*Image 5: Screenshot from body worn camera showing*
*Pollock (circled in red) about to knee Officer M.L. in the face*

*Id.* at ¶ 33(h).  Pollock took another swing at an officer:



*Image 6: Screenshot from body worn camera showing*
*Pollock (circled in red) throwing another punch*

Turning his attention to another officer on the ground, Pollock then grabbed that officer by the

neck:



*Image 7: Screenshot from body worn camera showing*
*Pollock (circled in red) grabbing another officer by the neck*

*Id.* at ¶ 33(i).   Pollock fell backwards and, after being helped up by Hutchinson, retreated temporarily into the crowd. Meanwhile, police were able to reform a defensive line (albeit without the metal barricade) at the top of the stairs.

Approximately six minutes later, at 2:04 pm, Hutchinson and Pollock again rushed the police line:



*Image 8: Screenshot from body worn camera showing*
*Pollock (circled in red) and Hutchinson (circled in yellow) rushing the police line*

Hutchinson leaned his body weight into officers and pushed, while also waving his arms in an apparent attempt to strike or grab an officer:



*Image 9: Screenshot from body worn camera showing*
*Hutchinson (circled in yellow) pushing the police line*

Meanwhile, Pollock ripped a police shield away from an officer and then briefly retreated to the

bottom of the steps:



*Image 10: Screenshot from body worn camera showing*
*Pollock (circled in red) ripping a shield out of an officer's hands*

*Id.* at ¶ 34(c).  Moments later, Pollock ran back toward the line and rammed the shield into an

officer:



*Image 11: Screenshot from body worn camera showing*
*Pollock (circled in red) ramming the shield at an officer*

*Id.* at ¶ 34(d)

At approximately 2:11 pm, Pollock and Hutchinson rushed the police line yet again:



*Image 12: Screenshot from body worn camera showing*
*Pollock (circled in red) and Hutchinson (circled in yellow) rushing the police line*

Pollock threw a punch at Officer B.R.:



*Image 13: Screenshot from body worn camera showing*
*Pollock (circled in red) throwing a punch at Officer B.R.*

*Id.* at ¶ 35(c). Pollock then wrestled a riot shield out of an officer's hands:



*Image 14: Screenshot from body worn camera showing*
*Pollock (circled in red) wrestling a shield away from officers*

*Id.* at ¶ 35(e).  Pollock retreated down one step, raised the shield over his head, and then rammed

the edge of the shield at an officer's throat or face, striking that officer:



*Image 15: Screenshot from body worn camera showing*
*Pollock (circled in red) ramming a shield at an officer*

*Id.* at ¶ 35(f).  He then thrust the edge of the shield at Officer J.G.'s face or neck:



*Image 16: Screenshot from body worn camera showing*
*Pollock (circled in red) ramming a shield at Officer J.G.*

*Id.* at ¶ 35(g).

After his extensive and prolific conduct on the West Plaza, Pollock, along with Olivia Pollock and Hutchinson, moved to a ledge on the Upper West Terrace. *Id.* at ¶ 37(a). There, officers were standing on bleachers that had been erected in advance of the upcoming inauguration. *Id.* at ¶ 37(b).

Just before 3:00 pm, officers were transporting a rioter who had been detained. One officer, Officer A.S., had his back to the crowd as he provided cover to his colleagues. *Id.* at ¶ 37(b). Pollock approached that officer from behind, climbed up a railing, and attempted to pull Officer A.S. down over the railing and into the crowd of rioters:



*Images 16 (left) and 17(right): Screenshots from body worn camera showing*
*Pollock (circled in red) grabbing Officer A.S. from behind and attempting to pull him backwards*

*Id.* at ¶ 37(c).

By at least 4:20 pm, Pollock positioned himself near the entrance to the Tunnel. At approximately 4:29 pm. when another rioter passed Pollock a riot shield, Pollock moved closer to the entrance where he picked up yet another riot shield and passed it to a different rioter. *Id.* at ¶ 38(c)-(d). For several minutes, starting at about 4:32 pm, Pollock slammed and pushed the shield into the line of officers:



*Images 18: Screenshots from body worn camera showing*
*Pollock (circled in red) pushing a riot shield into officers in the Tunnel*

*Id.* at ¶ 38(e).

Based on his conduct, Pollock is charged with three counts of civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Counts One, Thirteen, and Fifteen), five counts of assault, in violation of 18 U.S.C. § 111(a) (Counts Three, Six, Seven, Fourteen, and Seventeen), and two counts of assault with a deadly or dangerous weapon, in in violation of 18 U.S.C. § 111(a), (b) (Counts Two and Ten). Pollock is also charged with three counts of theft of government property, in violation of 18 U.S.C. § 641 (Counts Five, Nine, and Sixteen), entering and remaining in a restricted grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A), disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A), engaging in an act of physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C.

§ 1752(a)(4), (b)(1)(A), and committing an act of violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).  Trial is scheduled to begin on October 15, 2024.

### STATUTORY PROVISIONS INVOLVED

Section 111 of Title 18 of the United States Code provides that whoever:

(a)  In general.—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties

　　…

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b)  Enhanced  Penalty.—Whoever,  in  the  commission  of  any  acts  described  in subsection  (a),  uses  a  deadly  or  dangerous  weapon  (including  a  weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

Section 231(a)(3) of Title 18 of the United States Code provides:

Whoever commits or attempts to commit any act to obstruct, impede, or interfere with  any  firearm  or  law  enforcement  officer  lawfully  engaged  in  the  lawful performance of his official duties incident to and during the commission of a civil disorder  which  in  any  way  or  degree  obstructs,  delays,  or  adversely  affects commerce  or  the  movement  of  any  article  or  commodity  in  commerce  or  the conduct or performance of any federally protected function—

Shall be fined under this title or imprisoned not more than five years, or both.

Section 1752 of Title 18 of the United States Code provides:

(a)  Whoever—

　　(1)  knowingly  enters  or  remains  in  any  restricted  building  or  grounds without lawful authority to do so;
　　(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government  business  or  official  functions,  engages  in  disorderly  or

disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

…

(4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds;

or attempts or conspires to do so, shall be punished as provided in subsection (b).

(b) The punishment for a violation of subsection (a) is—

(1) a fine under this title or imprisonment for not more than 10 years, or both, if—
(A) the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or
(B) the offense results in significant bodily injury as defined by section 2118(e)(3); and
(2) a fine under this title or imprisonment for not more than one year, or both, in any other case.

Section 5104(e)(2)(F) of Title 40 of the United States Code provides:

Violent entry and disorderly conduct.—An individual or group of individuals may not willfully and knowingly—

(F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Section 5109(b) of Title 40 of the United States Code provides:

A person violating section 5103 or 5104(b), (c), (d), (e)(2), or (f) of this title, or attempting to commit a violation, shall be fined under title 18, imprisoned for not more than six months, or both.

## ARGUMENT

### A.  Legal Standard

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. Crosby*, 20 F.3d 480, 483 (D.C. Cir. 1994) (citations omitted).  It is entirely permissible, and quite common, for a defendant to be convicted of and sentenced for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the

imposition of multiple punishments.  *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy.").  Resolving questions of double jeopardy is inherently "a matter of legislative intent."  *United States v. Hoyle*, 122 F.3d 48, 49 (D.C. Cir. 1997).

Courts have established two avenues for analyzing this legislative intent.  First, if the offenses are criminalized in two *distinct* provisions, the test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), applies.  *See, e.g., United States v. Weathers*, 186 F.3d 948, 951-52 (D.C. Cir. 1999).  As the Supreme Court explained, "[t]he assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.  *Whalen v. United States*, 445 U.S. 684, 691-92 (1980).  In other words, when there are two distinct statutory provisions, *Blockburger* creates a "presumption" that controls absent "a plainly expressed contrary view on the part of Congress."  *Garrett v. United States*, 471 U.S. 773, 779 (1985).

The *Blockburger* test examines "whether there are two offenses or only one," by determining "whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense of the other."  *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  The *Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a given case."  *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998).  Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances."  *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018).  What matters is that each count's elements require proof of a fact that the other

counts do not.  *See id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Where a defendant claims that a single act or transaction has resulted in multiple violations of the same statutory provision, courts engage directly in the ordinary methods of statutory construction to determine what the "unit of prosecution" Congress intended to be within the statute. *See United States v. Hitselberger*, 991 F. Supp. 2d 86, 89 (D.D.C. 2013) ("To determine whether a transaction can give rise to multiple violations of a single statutory provision, courts must determine '[w]hat Congress has made the allowable unit of prosecution' for the criminal conduct." (quoting *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 225 (1952))).  Only if, after considering the language of the statute and legislative history, grievous ambiguity remains as to Congress' intent, must a court turn to the rule of lenity in defining the unit of prosecution. *Bell v. United States*, 349 U.S. 81, 84 (1955) ("[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.").  After determining the unit of prosecution, courts ask "how many distinct criminal acts the defendant committed."  *See United States v. Naidoo*, 995 F.3d 367, 380 (5th Cir. 2021).

For a violation of 18 U.S.C. § 111, the unit of prosecution relates to "the number of distinguishable *acts* of assault."  *United States v. Ramos Rivera*, 856 F.2d 420, 422 (1st Cir. 1988). Where a defendant commits multiple acts—even in rapid succession—those acts constitute independent violations of section 111.  *See*, *United States v. Voiris*, 964 F.3d 864, 870 (9th Cir. 2020) ("Voiris committed four assaultive acts by firing his weapon four separate times toward the door."); *United States v. Wesley*, 798 F.2d 1155, 1156-57 (8th Cir. 1986) (rejecting argument that struggle with guards constituted one assault and affirming multiple assault convictions where the

defendant "struck the first guard in the groin and moments later the second one was injured on the corner of the bed" where the assaults where "effected by separate acts."); *United States v. Hodges*, 436 F.2d 676, 677-78 (10th Cir. 1971) (rejecting a "continuing course of conduct" theory and affirming five separate assault charges where a defendant kicked one guard in the ribs and moments later kicked another guard in the back of the head, hit a third guard in the chest, and then hit two more guards on the way to his cell).  Where a defendant commits a single act—even if that act is directed at multiple victims—the act constitutes only one violation of section 111.  *See, Ladner v. United States*, 358 U.S. 169, 174-78 (1958) (holding that a single discharge of a shotgun would constitute only one violation of a precursor to section 111 no matter how many federal officers are injured).

### B.  Pollock's Motion is Premature.

If a court is inclined to find that charges are multiplicitous, it should ordinarily wait until after trial to do so.  *See, e.g., Missouri v. Hunter,* 459 U.S. 359, 366 (1983) ("Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *United States v. Clark*, 184 F.3d 858, 872 (D.C. Cir. 1999) ("Upon finding that a defendant has been convicted of two charges for a single offense, the usual remedy is to hold that the convictions have merged and order that one be vacated. . . . We detect no prejudice, since the evidence that Clark possessed the gun and that he possessed the ammunition was identical, and since the jury would have learned of both regardless which separate charge was brought.  Accordingly, the only remedy that is necessary is to 'vacate one of the underlying convictions.'"); *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999) ("We agree with the government that multiplicity claims are better sorted out post-trial. The factual issues . . . need development at trial, and attempting to decide such issues pre-trial would be premature."); *Ball v.*

*United States*, 470 U.S. 856, 865 (1985) ("We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. . . . Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses."); *United States v. Manafort*, 313 F. Supp. 311, 316 (D.D.C. 2018) (citing cases); *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 123-24 (D.D.C. 2012) ("This harm, if it exists at all, may be remedied during the sentencing phase if the jury returns a conviction on all counts of the Superseding Indictment."). The Court can deny Pollock's motion on this ground alone and reserve ruling until the conclusion of trial should the jury return guilty verdicts for each count.

### C.  Each Assault Charge Relates to a Distinct Assault.

Pollock claims that Counts Two and Three, which charge assaults that occurred around 1:56 pm, are multiplicitous.  According to him, the only difference is that one includes the enhanced penalty for use of a deadly or dangerous weapon.  He claims that this argument applies equally to Counts Seven and Ten, which charge assaults that occurred around 2:11 pm. But Pollock's argument misunderstands the charges: each count charges a separate and distinct assault.

Count Two alleges that at about 1:56 pm, Pollock used a flagpole to assault, resist, oppose, impede, intimidate, and interfere with officers.  Count Three, on the other hand, alleges that Pollock assaulted officers A.M. and M.L. and another police officer.  As alleged, this assault did not involve a dangerous or deadly weapon.  Rather, it occurred when Pollock grabbed officer A.M.'s waist and pulled her from the police line, then kneed and punched Officer M.L. in the face, then grabbed a third officer by the neck.  Although these acts comprising Count Two and Count Three occurred close in time, these were two separate incidents and constitute two separate

violations of section 111.[3]  *Voiris*, 964 F.3d at 870; *Wesley*, 798 F.2d at 1156-57; *Hodges*, 436 F.2d at 677-78.

Similarly, Counts Seven and Ten address separate acts of assault.  Count Seven alleges that at 2:11 pm, Pollock assaulted Officer B.R., and relates to Pollock throwing punches at Officer B.R. On the other hand, Count Ten alleges that Pollock assaulted Officer J.G. and another officer several seconds later, also at 2:11 pm.  This count relates to when Pollock rammed a riot shield first at one officer and then at another officer.[4]

Counts Two, Three, Seven, and Ten relate to separate and distinct assaultive acts: (1) ramming a flagpole at officers, (2) grabbing, punching, and kneeing officers in one scuffle, (3) punching at an officer, and (4) repeatedly ramming a riot shield into two officers.  These are four distinguishable acts of assault that constitute independent violations of section 111.

**D.  The 1752 Charges are not Multiplicitous under a *Blockburger* Analysis**

Counts Eighteen, Twenty, and Twenty-Two are not multiplicitous under a *Blockburger* analysis.

First, Count Eighteen charges a violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A).  The elements of that offense are:

(1)     The defendant entered or remained in a restricted building or grounds as defined in 18 U.S.C. § 1752(c) without lawful authority to do so;
(2)     The defendant did so knowingly; and
(3)     The defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Twenty charges a violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A).  The elements of that offense are:

---

[3] Arguably, Count Three could have been charged as three separate violations of section 111(a).
[4] Arguably, Count Ten could have been charged as two separate violations of section 111(b).

(1)     The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds as defined in 18 U.S.C. § 1752(c);

(2)     The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

(3)     The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions; and

(4)     The defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Twenty-Two charges a violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A). The elements of that offense are:

(1)     The defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

(2)     The defendant did so knowingly; and

(3)     The defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

These charges are not multiplicitous because each requires the government to prove an element that the other does not. Count Twenty requires proof that Pollock's "conduct in fact impeded or disrupted the orderly conduct of Government business or official functions." The other counts do not require proof of that fact. Count Eighteen, meanwhile, requires proof that Pollock knowingly entered and remained in a restricted building or ground without lawful authority. Neither Count Twenty nor Count Twenty-Two require that. Count Twenty-Two requires proof that Pollock "engaged in an act of physical violence" in or in proximity to a restrict ground. The other counts do not require proof of that fact.

Many courts have evaluated 1752 charges in the January 6th context and reached the same conclusion: each provision charged requires the government to prove an additional element which the others do not. *See, e.g., United States v. Bennett*, No. CR 21-312 (JEB), 2023 WL 6460026, at *4 (D.D.C. Oct. 4, 2023) ("This Court and other courts in this district have uniformly rejected

arguments that various subsections of 18 U.S.C. § 1752 and 40 U.S.C. § 5104 — the bases for Counts II through VI here — are duplicative.").[5]

Pollock nevertheless appears to argue that the 1752 counts are duplicative because each require proof that Pollock used or carried a deadly or dangerous weapon. But Pollock's argument focuses only on shared element that renders these charges felonies, rather than misdemeanors. The inquiry is not whether the charges have a shared element. Rather, the inquiry is whether each count requires proof of an element that the others do not. Because it is plainly the case that each provision requires proof of an element which the others do not, the counts are not duplicative.

### E.  The Remaining Charges are not Multiplicitous under a *Blockburger* Analysis

Pollock's final argument is that *all* charges against Pollock are multiplicitous because, according to Pollock, his conduct on January 6 was a "single course of conduct." ECF No. 332 at 5.  Indeed, according to Pollock, each count arises "out of essentially the same conduct." *Id.*  In making this argument, Pollock ignores the indictment, the elements of the offenses, and the law. Olivia Pollock seeks to join this argument, arguing that the assault, civil disorder, and 1752 charges against her are also multiplicitous.[6] *See Motion to Join and Adopt ECF #331 and #332*, ECF No. 333.

---

[5] In reaching this conclusion, Chief Judge Boasberg cited the following cases: *United States v. Ballenger*, 2022 WL 14807767, at *2 (D.D.C. Oct. 26, 2022) (applying *Blockburger* test to show that § 1752(a)(2) required proof of element that § 5104(e)(2)(G) did not and vice versa); *United States v. Dennis*, No. 21-679, ECF No. 45 at 2–3 (D.D.C. Dec. 6, 2022) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(D), and § 5104(e)(2)(F)); *United States v. Macandrew*, 2022 WL 17983533, at *1 (D.D.C. Dec. 27, 2022) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(D), and § 5104(e)(2)(G)); *United States v. Munchel*, 2023 WL 2992689, at *4–5 (D.D.C. Apr. 18, 2023) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(B), § 5104(e)(2)(D), and § 5104(e)(2)(G)).

[6] Olivia Pollock is charged with one count of civil disorder, in violation of 18 U.S.C. § 231, (Count One), one count of assault, in violation of 18 U.S.C. § 111(a) (Count Twelve), entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Nineteen), disorderly and disruptive conduct in a restricted building or grounds, in violation of 18

As the D.C. Circuit has explained, it is entirely permissible, and quite common, for a defendant to be convicted of and sentenced for multiple offenses arising out of a course of conduct so long as Congress authorized the imposition of multiple punishments. *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy.").  Here, each assault charge relates to "distinguishable *acts* of assault." *Ramos Rivera*, 856 F.2d at 422 (emphasis in original).

Similarly, the three civil disorder charges relate to discrete time periods that involve distinguishable acts.  Count One addresses Pollock's actions involved interfering with officers on the west front between approximately 1:56 and 2:12 pm, including pulling a barricade away from officers. Count Thirteen addresses Pollock's attempt to pull an officer over a railing while other officers were trying to transport a detainee at approximately 2:58. Count Fifteen addresses Pollock's conduct at the Tunnel much later in the day, between approximately 4:18 and 4:46 pm. These are each separate acts that properly result in separate charges.

Moreover, assault, civil disorder, and each of the 1752 offenses requires proof of an element that the others do not.  Civil disorder, for example, requires proof that, at the time a defendant committed an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement officer, the law enforcement officer was engaged in the lawful performance of his official duties incident to and during a civil disorder.  Neither assault nor the 1752 offenses require proof of a civil disorder or that an officer was responding to the civil disorder in the course

---

U.S.C. § 1752(a)(2) (Count Twenty-One), engaging in physical violence in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(4), (Count Twenty-Three), act of physical violence in the capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Twenty-Four), and failure to appear, in violation of 18 U.S.C. § 31466(a)(1) (Count Twenty-Five).

of his official duties.  Assault requires a defendant to act forcibly, the other counts do not require

this. Each of the 1752 charges requires proof of an element that the others do not require.  *See*

*supra*, Section D.

Ultimately, the fact that the government may prove some of the counts with overlapping

evidence has no bearing on the multiplicity analysis. Pollock fails to address the unit of prosecution

of these counts.  And both Pollock and Olivia Pollock ignore that each statute requires proof of an

element that the others do not.

## **CONCLUSION**

There is nothing unusual about the fact that Pollock's conduct on January 6, 2021, has led

to multiple charges.  But none of the counts are multiplicitous, and, in any event, Pollock's motion

is premature. The Court should deny the motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

DATED: September 4, 2024          By:      */s/ Anna Z. Krasinski*
Anna Krasinski
NH Bar No. 276778
Benet J. Kearney
NY Bar No.474048
Assistant United States Attorneys

Brendan Ballou
Special Counsel
DC Bar No. 241592

United States Attorney's Office
601 D Street NW
Washington, DC 20530
(603) 451-7851/ (212) 637 2260 / (202) 809-2058
benet.kearney@usdoj.gov
anna.krasinski@usdoj.gov
brendan.ballou-kelley@usdoj.gov

## <u>CERTIFICATION</u>

I, Anna Krasinski, certify that to serve the parties, their counsel, and standby counsel, that I am electronically filing this pleading with the Clerk of the Court using the CM/ECF system, and am separately mailing this filing to the defendant Joseph Daniel Hutchinson III.


<u>/s/ *Anna Krasinski*</u>
Anna Krasinski